# 14-1561

## United States Court of Appeals for the Second Circuit



DENISE O. SUARES,

*Plaintiff-Appellant,*

v.

CITYSCAPE TOURS, INC., DBA CITY SIGHTS NEW YORK,
JAD TRANSPORTATION, INC., DBA CITY SIGHTS NEW YORK,
CITY SIGHTS NEW YORK, and CHANDRASHEKAR SINGH,
*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

FELTON & ASSOCIATES
*Attorney for Plaintiff-Appellant*
*Denise O. Suares*
1371 Fulton Street
Brooklyn, New York 11216
(718) 622-1100

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES .................................................................. ii

JURISDICTIONAL STATEMENT ......................................................1

PRELIMINARY STATEMENT ...........................................................1

STANDARD OF REVIEW ..................................................................2

STATEMENT OF THE ISSUES ON REVIEW .....................................3

STATEMENT OF THE CASE..............................................................3

THE STATEMENT OF FACTS ...........................................................4

POINT I
    JAD AND CITY SIGHTS NEW YORK LLC
    HAVE COMMON MANAGEMENT, KEY PERSONNEL AND
    INTERCHANGE THEIR ATTORNEYS ...........................................7

POINT II
    A 56.1 STATEMENT WITHOUT CITATIONS
    SHOULD NOT BE TURNED INTO A WEAPON TO
    EVISERATE APPELLANT'S CASE................................................13

CONCLUSION ................................................................................20

# TABLE OF AUTHORITIES

*Cases*                                                                 *Page(s)*

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ........................................11

*Brown v. Eli Lilly & Co.,*
   654 F.3d 347 (2d Cir. 2011) ................................................................................2

*Brown v. Henderson,*
   257 F.3d 246 ......................................................................................................11

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ............................................................................................2

*Celotex Corp. v. Catrett, Administratrix of the Estate of Catrett,*
   477 U.S. 317, 106 S. C.T.2548, 91 L.Ed. 2d 285 (1986)....................................13

*Downes v. Beach,*
   587 F.2d 469 (10th Cir. 1978) ............................................................................18

*FDIC v. Great Am. Ins. Co.,*
   607 F.3d 288 (2d Cir. 2010) ................................................................................2

*Gulino v. New York State  Education Department,*
   460 F.3d 361 (2d Cir. 2006) ..............................................................................12

*Holtz v. Rockefeller & Co., Inc.,*
   258 F.3d 62 ................................................................................................ 2-3, 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986) ............................................................................................2

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,*
   475 U.S. 574, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)....................................13

*Schwapp v. Town of Avon,*
   18 F.3d 106 (1977) ............................................................................................11

*Viafara v. MCIZ Corp., CitSights New York LLC, JAD Transportation,Inc.*,
  12 Civ 7452 ............................................................................................11

*Wight v. BankAmerica Corp.*,
  219 F.3d 79 (2d Cir. 2000) ..................................................................19

**Statutes/Regulations/Miscellaneous**

28 U.S.C. §1331 .....................................................................................1

## JURISDICTIONAL STATEMENT

The district court had original jurisdiction over this action pursuant to 28 U.S.C. §1331 arising under federal law; Title VII Claims, Fair Labor Standards Act and Equal Pay Act Claims.

This appeal is from two final judgments, appearing at SPA22 and SPA24, disposing of all claims filed in this action commenced on August 15, 2011 and amended on February 16, 2012.  [A46-59 and A61-73]   Two Notices of Appeal were served and filed.   Thereafter, the Notices of Appeal were amended to encompass both judgments. [SPA25 -  SPA27]  An Amended Notice of Appeal was served on May 27, 2014.  [A1077, A1078]

## PRELIMINARY STATEMENT

Appellant, a member of a protected class, complains of gender discrimination, unequal terms and conditions of employment, reduction of wages and retaliation.  On February 26, 2010 Appellant filed a complaint with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") alleging that defendant Chandrashekar Singh sexually assaulted her at a company-sponsored holiday party.  EEOC issued a Notice of Suit Rights dated May 17, 2011.

## STANDARD OF REVIEW

The Memorandum and Order dated March 12, 2014 conclude that Appellant failed to satisfy the legal standard in opposing motions for summary judgment. The district court noted that to "To survive, the non-moving party 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.' *Brown v. Eli Lilly & Co*., 654 F.3d 347, 358 (2d Cir. 2011) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)."  [Special Appendix hereinafter "SPA" SPA2]

In discussing the legal standard, the Court notes that the "'…non-moving party must do more than simply show that there is some metaphysical doubt as to material facts' quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); FDIC v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010))." [SPA2]   Appellant's opposition demonstrates substantially more than a showing of metaphysical doubt but rests on admissible evidence.  Appellant does not "'…rely on conclusory allegations or unsubstantiated speculation'" but disputes the facts set forth as uncontroverted in the Memorandum and Order on the basis of documentary evidence set forth in the record. [SPA2]

The district court found that in the absence of Appellant's annotated 56.1 Statement pursuant to Local Civil Rule 56.1(a) the district court treated Appellees' allegations as undisputed and uncontroverted within the context of *Holtz v.*

2

*Rockefeller & Co., Inc.*, 258 F.3d 62, but did not "blindly accept JAD and City Sights' 56.1 Statements at face value..." [SPA3]

De novo review is required to determine if Appellees met their burden of proof establishing that there are no genuine issues of fact. Appellant asserts that the Joint Appendix sets forth admissible evidence of the existence of genuine issues of material fact.

## STATEMENT OF THE ISSUES ON REVIEW

Q.  Did the Court err in granting summary judgment to Appellees?

A.  Yes. In finding a violation of Local Civil Rule 56.1(a) the district court disregarded sworn affidavits supported by documentary evidence submitted in opposition to Appellees' motions for summary judgment.

Q.  Did the Court err in dismissing Appellant's motion for summary judgment because the 56.1 Statement did not contain citations in accordance with the Local Rule?

A.  Yes.

## STATEMENT OF THE CASE

This action was commenced on August 11, 2011. The Complaint was amended on February 14, 2012 joining Chandrashekar Singh as a defendant. [A46-A59, Verified Complaint and Amended Verified Complaint A61-A73]

Appellees CityScape Tours, Inc. and JAD Transportation Inc. by their attorneys Vandenberg & Feliu, LLP filed an Answer with Affirmative Defenses to the Complaint on September 21, 2011. [A705 – A715]  CityScape Tours, Inc. and JAD Transportation Inc. also filed an Amended Answer with Affirmative Defenses to the Complaint on January 5, 2012. [A716 – A726]  On or about March 1, 2012, Appellees CityScape Tours, Inc. and JAD Transportation Inc. by their attorneys Vandenberg & Feliu, LLP filed an Answer with Affirmative Defenses to the Amended Complaint. [A727 – A738]

On September 21, 2011, Appellee City Sights New York LLC by its attorneys Fox Rothschild LLP filed an Answer with Affirmative Defenses to the Complaint. [A773 – A786] On March 14, 2012, Appellee City Sights New York LLC by its attorneys Fox Rothschild LLP filed an Answer with Affirmative Defenses to the Amended Complaint.   [A787- A801]

Pro se defendant Chandrashekar Singh filed an Answer to the Amended Complaint on or about April 4, 2012.    [A803, 804]

### THE STATEMENT OF FACTS

Appellant was a licensed Tour Guide for City Sights on January 12, 2010, when she was sexually assault by defendant Singh while in attendance at a holiday party hosted by Mark Marmurstein & Family at Planet Hollywood.   Mr. Marmurstein is a principal of CitySights New York. [A747, A704] Approximately

4

150 guests were present at the time [A46-59, A61-73; ¶¶ 30, 31, 32, 33, 34]   The invitation noted an open bar and offered, "To help you be responsible, we will provide transportation from the party to Penn Station, Grand Central Station and Port Authority where we encourage you to take public transportation."  [A46 – A59; A61 -A73; ¶¶27, 28]

As set forth in the Verified Complaint and the Amended Verified Complaint, Appellant was seated on a sofa when defendant without cause or provocation leapt into Appellant's lap with his legs straddling hers.  Defendant wrapped one of his legs around Appellant's neck forcing Appellant's face into his crouch.  [A46 – 59; ¶29; A61-73; ¶30]  Appellant asserts that defendant used his leg to repeatedly thrust his lower torso into her face causing repeated physical contact.  [A46 – 59, ¶29; A61 -73; ¶30]    Appellant did not know defendant.

Manager Collin West confirmed that he pulled Defendant Singh from Appellant's person.  [A1089, A1090 and A46 – A59; ¶31, A61 -A73; ¶32] Appellant left the venue immediately with another employee, Erica Hawkins. [A46 – 59; ¶32; A61 -73; ¶33] Appellant was distraught.

Appellant reported the assault to Tim Ries, the Tour Guide Manager, who scheduled a meeting for January 18, 2010with Michael Booker, the Director and General Manager of Human Resources.   [A46 – A59, ¶¶35 – A46; A61 -A73,

¶¶37 - 49]  Mr. Ries requested that Appellant submit a written incident report supplementing her oral report to him.

On January 18, 2010, prior to the meeting with Mr. Booker, Mr. Ries directed Appellant to present the Incident Report to Mr. Ries's supervisor Rodney Trahan.  Appellant and Mr. Reis met with Mr. Trahan.  [A888]

In her presence, Mr. Ries advised Rodney Trahan of Singh's assault and that he (Ries) reported the assault to Michael Booker, the Director and General Manager of Human Resources, when first notified by Ms. Surares.  As the Incident Report cited Collin West as having removed Singh from Appellant's person, Mr. Trahan called Collin West into the January 18, 2010 meeting and asked Mr. West to corroborate the facts alleged in the Incident Report.  Mr. West said the facts asserted were accurate. [A65]

Appellant alleges that Mr. Trahan reprimanded Mr. Ries for having reported the incident to Human Resources stating that because Mr. Singh was "drunk," Mr. Singh could not be prosecuted.  [A66]   When deposed, however, Messrs. Trahan and West denied that they met with Appellant on January 18, 2010 and also denied that any such statements were made. [A46 – A59, ¶¶35 – 46; A61 -A73, ¶¶ 37 – 49]  After the meeting with Messrs. Ries, Trahan and West, Appellant was accompanied by Mr. West to a meeting with Mr. Booker and Gail Gordon, also on January 18, 2010.

6

Another meeting took place on January 29, 2010 between Ms. Suares, Michael Booker and his secretary, Gail Gordon.   In this meeting Mr. Booker espoused the same position as that of Rodney Trahan, i.e. Mr. Singh was drunk and has no memory of what took place.  Therefore, Mr. Singh was not responsible for his conduct and could not be prosecuted. [A46 – 59, ¶49; A61 -73; ¶52**]**

## POINT I

### JAD AND CITY SIGHTS NEW YORK LLC<br>HAVE COMMON MANAGEMENT, KEY PERSONNEL AND<br>INTERCHANGE THEIR ATTORNEYS

JAD and City Sights shared key personnel but failed to disclose these facts to the district court.  City Sights New York LLC argued in its Memorandum of Law In Support of Appellee City Sights New York LLC'S Motion for Summary Judgment that in the absence of "interrelated operations, common management, centralized labor operations or common ownership," City Sights New York LLC was not an Employer. [A692 – A698] The district court agreed finding that **"There is no evidence of common management or central control of labor relations, as Plaintiff's supervisors hired and employed only by the JAD Appellees, and Plaintiff did not depose any City Sights representative or serve any document requests. CitySights 56.1¶36, Freedberg Decl., ¶6]"   [SPA9]

Appellant's evidence refutes this finding. The district court ignored deposition testimony of Defendant Singh, statements of Rodney Trahan, the

Affidavits of a former co-worker and Tour Guide Erica Hawkins, the Affidavit of

Appellant, and documentary evidence in the form of a CitySights Newsletter.

The fact is that Appellant deposed Rodney Trahan, one of Appellant's

supervisors who admitted under oath that he worked for both Appellees while

Appellees allege that Mr. Trahan is and was employed by JAD only.   Mr. Trahan

testified that he was employed by JAD and City Sights almost simultaneously.   At

his deposition of June 26, 2012, Mr. Trahan testified that City Sights hired him as a

dispatcher in June 2005. [A1152] Mr. Trahan also testified that his employment

commenced with JAD on June 5, 2005.   [A1153] Appellant corroborated Mr.

Trahan's testimony through an affidavit from Erica Hawkins, a former licensed

Tour Guide, and through Exhibits to her Affidavit. [A932, A933, A939, A940]

In addition, Ms. Hawkins averred that Mark Marmurstein was the president

and CEO of CitySights NY of five years commencing in 2007. [A931]    Mr.

Marmurstein paid tribute to Mr. Trahan in a company in the February 2011 Edition

of CitySights New Letter and repeatedly references Mr. Trahan as an employee of

CitySights. [A939, 940]   The Newsletter reports that "Rodney [Trahan] began his

career with **CitySights NY** since its conception." [No Emphasis Added]  [A939,

A931]  "Rodney began his career with the company on May 27th, 2005 as a Field

Dispatcher and has quickly moved up the ranks to Operations Manager." [A939,

A931]

Further, an interview of Rodney Trahan appears in the Newsletter in which Mr. Trahan discusses his employment at CitySights NY. [A939, 940] Neither Mr. Trahan nor any content in the Newsletter references JAD as Mr. Trahan's employer. Appellees do not dispute the authenticity of the Newsletter or the accuracy of the statements contained therein. Appellant in her opposition to City Sights' Motion for Summary Judgment demonstrates by admissible evidence the existence of common management contrary to City Sights' contention.

Ms. Hawkins averred that she was a Tour Guide from 2007 through 2012 and that Mr. Trahan supervised all Tour Guides including Appellant and herself for the entire period of her employment. [A932] Ms. Hawkins averred that Mr. Trahan determined their daily tour schedule of all Tour Guides and determined if a Tour Guide worked at all. [A932] According to Ms. Hawkins, Mr. Trahan determined if a Tour Guide worked one tour or two tours, the time of day of the tour and the day or days of the week the tour. [A932] According to Ms. Hawkins weekend tours beginning on Friday through Sunday were more lucrative than Monday tours as gratuities were greater. [A932] Ms. Hawkins averred that Mr. Trahan controlled every aspect of the Tour Guides duties because he also supervised the bus drivers and dispatchers and assigned the buses as well. [A932] Mr. Trahan paired the driver and the Tour Guide and selected the tour that each worked.

9

According to the undisputed statements, Mr. Trahan worked for Appellees, JAD and City Sights.  Tim Ries was Appellant's immediate supervisor, Mr. Ries reported to Mr. Trahan.

In the same newsletter, Michael Booker identifies himself as the General Manager of Human Resources of City Sights. [A941, 944] When Appellant complained to EEOC, regarding the January 12, 2010 assault, Mr. Booker responded on CitySights' letterhead, and stated "Immediately upon hearing that Ms. Suares had a complaint, as I do in all cases, I asked others to join me in the meeting.  Present at this meeting were Gail Gordon, an HR Assistant, Colin West, an office Manager and Denise Suares a Tour Guide *as well as myself all employees of CitySights NY*." [A961, A962, A973]   [Emphasis added]

An Exhibit to Ms. Hawkins' also avers that she was interviewed and hired as a Licensed Tour Guide by Mr. Booker. [A746, A933]  Mr. Booker's CitySights business card appears as an Exhibit to Ms. Hawkins' affidavit.  [A944]  Further, Ms. Hawkins' averred that during her tenure she learned that Mr. Booker was employed by JAD and City Sights.  [A747]

Appellant also brought to the attention of the district court that while the law firm of Vandenberg and Feliu represented JAD in the instant action, it simultaneously represented CitySights New York LLC and Jacob Marmurstein and Mark Marmurstein before the United States District Court for the Southern District

10

of New York in the action *Viafara v. MCIZ Corp., CitSights New York LLC,  JAD Transportation,Inc., 12 Civ 7452.  [A974]  CitySights New York LLC.* [A974] Appellee*s* shared and interchanged counsel during simultaneous litigations.

These facts are asserted in Appellant's Opposition.  [A974] Appellant raises genuine issues of material fact to Appellees' motions for summary judgment. Certainly where Appellees fail to rebut these facts, the mere silence on the subject of common management and interchangeable attorneys raises an inference that Appellant raised genuine issues of material facts.  "Ambiguities" and inferences raised by them should be viewed in favor of the party opposing motions for summary judgment.  [*Brown v. Henderson,* 257 F.3d 246, 251] Summary judgment should not be granted where the parties' dispute of the facts might change the outcome of the case.  [*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)]

Here, Appellant has met her burden of proof in coming "…forward with specific evidence demonstrating the existence of a genuine dispute of a material fact" as set forth in the district courts' Memorandum and Order.  [SPA2]  These facts are not conclusory allegations or unsubstantiated speculation as set forth in the district courts' Memorandum and Order.  [SPA2]  The district court failed to consider the affidavits in opposition and exhibits offered through the affiants.  This Court found in  *Schwapp v. Town of Avon,* 18 F.3d 106, 110 (1977), "…the district

11

court erred in refusing to consider as evidence in support of his complaint two affidavits by former APD police officers…"  The district erred in this instance.

The relationship of the parties is herein is paramount to determining Title VII liability in employment discrimination.  This Court espoused more than the common-law principles of agency *Gulino v. New York State Education Department,* 460 F.3d 361 (2d Cir. 2006) as discussed in the Memorandum and Order. [SPA8, SPA9]  The district court notes in its Memorandum and Order that Gulino "'turn[s] to common-law principles to analyze the character of an economic relationship only in situations that plausibly approximate an employment relationship.'"  [SPA8]  Again quoting from *Gulino* the district court observes that "'A prerequisite to considering whether an individual is an employee under common-law agency principles is that the individual have been hired in the first instance…[by] look[ing] primarily to whether a Appellant has received direct or indirect remuneration from the alleged employer. Id.'" [SPA9]  The more appropriate reading of *Gulino* in the context of this  action is set forth below:

> The "single or joint employer" test utilizes a four-factored analysis developed by the NLRB to determine whether two or more employers can be treated as one for purposes of assigning liability  S*ee id.* (identifying four factors as "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control").  In this Circuit, this analysis has been confined to two corporate contexts: first, where the plaintiff is an employee of a wholly-owned corporate subsidiary; (citation omitted) and second, where the plaintiff's employment

12

> is subcontracted by one employer to another, formally distinct, entity. (*See, e.g., Arculeo v. On-Site Sales & Marketing , LLC,* 425 F.3d 193 (2d Cir. 2005; *see also, e.g., Zheng v. Liberty Apparel Co.,* 355 F.3d 61 (2d Cir. 2003); *Clinton's  Ditch Coop. Co. v. NLRB, 778 F.2d 132, 137 (2d Cir. 1985). Id.*

Genuine issues of material fact are raised and summary judgment should not have been granted to Appellees.   [*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986); *Celotex Corp. v. Catrett, Administratrix of the Estate of Catrett*, 477 U.S. 317, 106 S. C.T.2548, 91 L.Ed. 2d 285 (1986)]

## POINT II

## A 56.1 STATEMENT WITHOUT CITATIONS SHOULD NOT BE TURNED INTO A WEAPON TO EVISERATE APPELLANT'S CASE

The district court states *inter alia,* "Plaintiff disregarded Local Civil Rule 56.1(a), which requires a motion for summary judgment to be supported by 'a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried.'" [SPA3]  The district court further states, "Plaintiff's response disregarded this requirement entirely and provided no Counter-Statements as required by Local Rule 56.1(c)."  Appellant's 56.1 Statement appears at A751- A753. As a result of the foregoing, the district court determined that the following facts were undisputed and uncontroverted. [SPA3]

a.  Appellant was hired by CityScape in October 2007.
[SPA4, SPA9]

Appellant avers that she was hired by CitySights in
October 2007. [A740]

Erica Hawkins corroborates Appellant's representation
in that Ms. Hawkins avers that she was hired by
CitySights in 2007.     [A746, A933]

b. The terms and conditions of the tour guides' employment
is exclusively governed by a union agreement between a
union and the JAD Defendants. [SPA4, SPA10]

Erica Hawkins avers, "I was involved in collective
bargaining with Christopher D'Angelo, Esq., and Janet
West... The Union Contract, Exhibit L to the West
Affidavit is not signed by Shop Stewards.  This means
there was no employee involvement in negotiating this
contract.  I offer these union-related statements on the
basis of personal knowledge….There was no participation
by employees.  When I was hired in 2007, I did not know
that the USW existed.  A Collective Bargaining Agreement
was introduced to the Employees for the first time in 2009.
We paid no union dues.  We had no union cards.  We had
no union representation.  There was no grievance
procedure.  If grievance procedures existed, I would have
known about it.  There was no Handbook, no disciplinary
process and no performance review. [A936, A937]

Appellant avers that "Union dues were deducted from my pay
check for the first time in October 2010.  Notwithstanding the
payroll deduction, I did not have a union, a union contract and I
was unaware of any union representation. [A958]

c.  Defendant Singh worked for JAD as a dispatcher,
non-managerial position.  [SPA4]

Singh testified that he worked for CitySights and that his pay
checks said City Sights. [A813, A815]

14

The district court found Rodney Trahan was Singh's supervisor.  [SPA5]

d.  Booker met with Singh on January 18, 2010 and terminated Singh's employment on that date. [SPA5]

Singh testified that he did not work on January 12, 13 and 14, 2010. [A860] Singh testified that he returned to work on January 15, 2010, that he worked January 15 to January 20, 2010. [A860 – A865]

e.  That Appellees engaged in "swift termination" of Singh. [SPA14, SPA15]

Singh testified that on January 20, 2010 he was "laid-off." [A842] Singh received unemployment insurance benefits, not available to persons discharged for cause. [A842, A843]

Appellees' "Termination Notice" actually is a warning and states "Date of Warning 1/18/2010." [A353]  The notice states, "Type of Warning"  "for behavior and incident of 1/12/10."  [A353] "Action to be taken:" Termination."

f.  Plaintiff does not raise an issue of material fact by alleging lack of employee handbook, as "the absence of a written sexual harassment policy standing alone, [does not] permit[] a finding that the employer has failed to provide a reasonable avenue for complaint or that the employer knew of the harassment but did nothing about it."  [SPA14]

Appellant requests copy of Employee Manual/Handbook. [A52] Appellant inquires about the company's sexual harassment policy. [A53, A958]

Erica Hawkins avers that there is no grievance procedure or employee handbook. [A937]

In her Memorandum of Law, Appellant discusses the absence of an Employee Manual and absence of a sexual harassment policy. [A984]

Appellees complained to the district court that Appellant's 56.1 Statement omitted citations and that Appellant did not provide a Counter Statement to the submission of their 56.1 Statements. Appellant attempted to address Appellees' objections and requested that their 56.1 Statements be treated as uncontroverted and undisputed.

Appellees CityScape and JAD submitted a 56.1 Statement consisting of twenty-four pages and 187 material facts purportedly not in dispute. [A18 – A42] Appellee City Sights submitted a 56.1 Statement consisting of eight pages and 47 material facts purportedly not in dispute. [A674 – A681]  This means that Appellant was to respond to 32 pages and 234 statements of material facts purportedly not in dispute.

The district court relying on *Holtz v. Rockefeller*, 258 F.3d 62 at 74 stated that "the Court has disregarded allegations that were 'not accompanied by citation to admissible evidence' and allegations where the cited evidence [did] not support the allegation." [SPA3]  This also means that Appellant's case was eviscerated by the magnitude of the responses required to be rendered in connection Appellees' made-up undisputed material facts.   Appellant could not respond the within the timeframe constraint fixed.

 It is apparent that Appellees' objective was not to assist the district court in deciding the motions for summary judgment as many of the facts asserted were

16

disputed by sworn testimony to which Appellees were privy but rather to overwhelm the efforts of Appellant's attorney, a sole practitioner, and to prevent counsel from providing meaningful representation to Appellant. For example, JAD and CityScape set forth in their Statement of Undisputed Material Facts that "(12) Singh worked for JAD as a Dispatcher ...He met with Michael Booker and was fired from that position on January 18, 2010 following a complaint of sexual harassment asserted against him by Suares." (Citations to West and Booker omitted) [A19] Appellees' documentary proof of termination turns-out to be a "Warning" for inappropriate behavior. [A353] This document submitted by Appellees does not support the undisputed, uncontroverted fact that Appellees took "swift" action to terminate Singh. Singh adamantly disputes this that he was fired. Singh states he was not fired and that he met with Human Resources Director Michael Booker on January 20, 2014.

Counsel for JAD and CityScape includes excerpts from Singh's deposition in their moving papers but omits those pages where Singh states that he worked for City Sights and Rodney Trahan worked for City Sights at the time of the assault. Singh states that he reported for work on January 15, 16, 17, 18, 19 and 20, 2010, that he reported for "roll call" conducted by Trahan on each of those six days, and Trahan did not once in those six days approach him regarding his misconduct on January 12, 2010. [A860-865]

The omission of these portions of the Singh's deposition from Appellees' moving papers does not make these issues "Undisputed Material Facts." Appellees' documentation contradicts its "Undisputed Material Facts." However, these false "undisputed, uncontroverted" facts require Appellant's response and citation to the record under penalty of dismissal.

Under Local Rule 56.1 the district court permitted Appellees to eviscerate Appellant's case, to disregard Appellant's affidavits and documentary evidence and to treat Appellees' motions as though they were uncontested. Appellees' motions were treated as if there was no opposition to them. The district court treated Appellant's papers as if they did not exist.

Local Rule 56.1 is a rule and not a statute. This rule encourages wealthy opponents to at least attempt to squash with impunity any opposition that they might encounter. "While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out." [*Downes v. Beach,* 587 F.2d 469, 472 (10th Cir. 1978)]

Hence, such litigants engage in these stealthy tactics regardless of the veracity of their 56.1 Statements requiring an inordinate amount of time in

rebutting all manner of assertions.[1]  Therefore, less financially endowed litigants

appear to have no recourse when their more able adversaries seek to assert their

power. Such a requirement under Local Civil Rule 56.1 is manifestly unfair when

requests for extensions are vociferously opposed as though the resources of the

parties were equal.

Appellant requests a more pragmatic approach in the de novo review that

takes into account that Appellant has one attorney while her adversaries each have

many.  Local Rules are not statutes and can be waived in the interests of justice.

[*Wight v. BankAmerica Corp*., 219 F.3d 79 (2d Cir. 2000)]

Finally, when retaliation is alleged, for example, "dead heading," the

discharging of passengers, interrupting the tour, the Tour Guide does not receive

tips.  The district court found that Appellees offered a "legitimate, non-

discriminatory" reason for the act of retaliation and determined that no reasonable

jury could find Title VII retaliation occurred.  However, the offer of a "legitimate,

non-discriminatory" reason does negate the cause of action. Appellant was

---

[1]  Having excoriated Appellee, Appellant must bring to this Court's attention a criticism noted by the district court in connection with Appellant's Brief.  The district court states in a footnote, "Plaintiff appears to misrepresent these facts to the Court.  In her opposition memorandum, Plaintiff claims that Janet West 'admits that by the end of year 2010 plaintiff's wages were reduced by as much as 54%'" Pls Oppo. Mem. 14 (citing West Aff., ¶¶21-23), Dkt. No. 97 [SPA6] The district court devotes 10 lines to the statement.  In point of fact, West states "By comparing the Tour Guide hiring dates and total earnings from 2009 and 2010, one can see that 15 other Tour Guides hired before, after and at about the same time as *Plaintiff experienced a diminution in wages of between 15% and 54% from 2009 to 2010."* [A339]  [Emphasis Added] The focus was on the latter half of the sentence set forth italics.

19

engaged in a protected activity when she filed the complaint with EEOC.

Appellant asserts that her tours were changed notwithstanding her seniority and she

received less desirable assignments which affected her pay in the form of

decreases.  While was number 36 in seniority of more than 200 employees, she

received part-time employment.  During the part-time employment her tours were

aborted by Rodney Trahan of CitySights.  Mr. Trahan supervisor her, scheduled

her assignments and the assignments of the drivers on whose buses she carried-out

her duties.  While Appellees allege economic reasons for the change in

assignments, fewer tours, earlier tours, Appellant met her burden of proof.

## CONCLUSION

The judgments should be vacated and the order reversed.

Dated:  Brooklyn, New York
        July 7, 2014

Respectfully Submitted


_____
Regina Felton, Esq.

CERTIFICATION PURSUANT TO
Fed. R. App. P. 32(a)(7)(B) and (C)

The undersigned hereby certifies that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and (C) because the brief contains 4,484 words of text.

The brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and the type style requirements of Fed.R.App.P.32(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word 2003, Times New Roman, Size 14.

Dated: July 7, 2014

_____
Regina Felton, Esq.

*db*