# 14-1561-cv

# United States Court of Appeals
## for the
# Second Circuit

———————●□●———————

DENISE O. SUARES,

*Plaintiff-Appellant,*

– v. –

CITYSCAPE TOURS, INC., dba City Sights New York,
JAD TRANSPORTATION, INC., dba City Sights New York,
CITY SIGHTS NEW YORK, CHANDRASHEKAR SINGH,

*Defendants-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES CITYSCAPE TOURS, INC., and JAD TRANSPORTATION, INC.

VANDENBERG & FELIU, LLP
*Attorneys for Defendants-Appellees*
*Cityscape Tours, Inc., and*
*JAD Transportation, Inc.*
60 East 42nd Street, 51st Floor
New York, New York 10165
(212) 763-6800

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendants-Appellees CityScape Tours, Inc. and JAD Transportation, Inc. state that they are not owned by a parent corporation, and there is no publicly held corporation which owns 10% or more of either company's stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT………………………………..i

TABLE OF AUTHORITIES ................................................................. iv

PRELIMINARY STATEMENT ...........................................................1

STATEMENT OF JURISDICTION.......................................................4

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........5

STATEMENT OF THE FACTS ...........................................................5

    Title VII Harassment and Retaliation Claims....................................6

    Equal Pay Claims Under Title VII and the EPA/FLSA .....................9

SUMMARY OF ARGUMENT ............................................................9

    Title VII Claims .................................................................................9

    EPA/FLSA Claims...........................................................................11

POINT I...............................................................................................12

THE STANDARD OF REVIEW .........................................................12

POINT II .............................................................................................13

THE DISTRICT COURT PROPERLY DENIED APPELLANT'S
SUMMARY JUDGMENT MOTION ..................................................13

    A.  Appellant Failed to Adhere to Federal Rule of Civil Procedure 56............13

POINT III ............................................................................................18

THE DISTRICT COURT PROPERLY GRANTED THE JAD APPELLEES'
MOTION FOR SUMMARY JUDGMENT ..........................................18

    A.  Appellant's Failure to File A Counter-Statement Pursuant
        To Local Rule 56.1(b) Was Properly Considered By
        The District Court ...............................................................18

    B.  The District Court Properly Concluded That There Is No Basis
        To Impute The Offending Conduct To Appellees ....................................22

        1.  JAD Appellees Provided a Reasonable Avenue of Complaint and
            Took Prompt and Effective Remedial Action .........................................23

POINT IV.............................................................................................30

THE DISTRICT COURT PROPERLY GRANTED THE JAD APPELLEES'
MOTION FOR SUMMARY JUDGMENT ON APPELLANT'S TITLE VII
RETALIATION CLAIMS..................................................................30

A.  Appellant's Hours and Wages Were Not Reduced Due to Retaliatory Changes in the Schedule ................................................................31

   1.  Conduct Occurring Prior to January 14, 2010 Cannot Be "Retaliatory" ..........................................................32

   2.  No Retaliatory Scheduling Occurred After January 14, 2010 ................33

   3.  Appellant Did Not Suffer a Retaliatory Reduction In Pay ......................34

B.  Appellant Fails to Generate a Triable Issue of Fact Regarding the Examples of Retaliation in Her EEOC Charge ...........................................36

C.  Appellant's Claims About Her Co-Workers Do Not Rise to the Level of a Title VII Retaliation Claim ........................................................38

POINT V ......................................................................................................39

THE DISTRICT COURT PROPERLY GRANTED APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON APPELLANT'S REMAINING CLAIMS ..................................................................................39

A.  Appellants Title VII Equal Pay Claim Is Time Barred Because She Failed to Exhaust Her Administrative Remedies .................39

B.  Appellant's Equal Pay Act Allegation Lacks Triable Issues of Fact ..........41

POINT VI ....................................................................................................43

THE DISTRICT COURT PROPERLY GRANTED APPELLEE CITY SIGHTS' MOTION FOR SUMMARY JUDGMENT .................................43

CONCLUSION ...........................................................................................44

# TABLE OF AUTHORITIES

## Federal Cases

*Alfano v. Costello*,
  294 F.3d 365 (2d Cir. 2002) ...............................................22

*Allianz Ins. Co. v. Lerner*,
  416 F.3d 109 (2d Cir. 2005) ..............................................12

*Archie Comic Publications, Inc. v. DeCarlo*,
  258 F. Supp. 2d 315 (S.D.N.Y. 2003) ...............................19

*Aulicino v. New York City Dep't of Homeless Servs.*,
  580 F.3d 73 (2d Cir. 2009) ...............................................13

*Ayuso v. Amerosa*,
  05 CIV 0163 (GLS), 2008 WL 141862 (N.D.N.Y. Jan. 11, 2008) .....................16

*Borrero v. Collins Bldg. Servs., Inc.*,
  01 CIV 6885 (AGS), 2002 WL 31415511 (S.D.N.Y. Oct. 25, 2002).................24

*Burlington N. & Santa Fe Ry. Co. v. White*,
  548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) ............................ passim

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ....................................13

*Chamberlin v. Principi*,
  247 F. App'x 251 (2d Cir. 2007) .......................................37

*Christiana v. Metro. Life Ins. Co.*,
  839 F. Supp. 248 (S.D.N.Y. 1993) ....................................42

*Corning Glass Works v. Brennan*,
  417 U.S. 188, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974) ..........................................41

*Donovan v. Big V Supermarkets, Inc.*,
  98 CIV 2842 (AGS), 1999 WL 615100 (S.D.N.Y. Aug. 12, 1999)....................25

*Faktorovich v. Mem'l Sloan-Kettering Cancer Ctr.*,
  13 CIV 4051, 2014 WL 4652801 (2d Cir. Sept. 19, 2014) (summary order)......41

iv

*Ford v. New York City Dep't of Health & Mental Hygiene*,
545 F. Supp. 2d 377 (S.D.N.Y. 2008) ........................................................ 32, 33

*Gutierrez v. City of New York*,
756 F. Supp. 2d 491 (S.D.N.Y. 2010) ...................................................30

*Holtz v. Rockefeller & Co.*,
258 F.3d 62 (2d Cir. 2001) ................................................... 16, 17, 19

*Howley v. Town of Stratford*,
217 F.3d 141 (2d Cir. 2000) .................................................23

*In re Agent Orange Prod. Liab. Litig.*,
517 F.3d 76 (2d Cir. 2008) .................................................17

*Jackanin v. Mount Sinai Hosp.*,
98 CIV 5752 (KTD), 2003 WL 402443 (S.D.N.Y. Feb. 20, 2003).....................29

*Kessler v. Westchester Cnty. Dep't of Soc. Servs.*,
461 F.3d 199 (2d Cir. 2006) .................................................30

*La Marco v. New York State Nurses Ass'n*,
118 F. Supp. 2d 310 (N.D.N.Y. 2000)........................................ 34, 36

*Lavin-McEleney v. Marist Coll.*,
239 F.3d 476 (2d Cir. 2001) ............................................. 41, 42, 43

*Legeno v. Douglas Elliman, LLC*,
311 F. App'x 403, 404 (2d Cir. 2009) .................................................39

*Ludwiczak v. Hitachi Capital Am. Corp.*,
528 F. Supp. 2d 48 (D. Conn. 2007)...................................................43

*Martin v. MTA Bridges & Tunnels*,
610 F. Supp. 2d 238 (S.D.N.Y. 2009) .................................................40

*Marvelli v. Chaps Cmty. Health Ctr.*,
193 F. Supp. 2d 636 (E.D.N.Y. 2002) .................................................35

*McArdle v. Arms Acres, Inc.*,
03 CIV 05721 (PGG), 2009 WL 755287 (S.D.N.Y. Mar. 23, 2009) ........... 23, 24

*Mitchell v. Brooklyn Hosp. Ctr.*,
    326 F. App'x 44, 44-45 (2d Cir. 2009)……………………………………….39

*Moccio v. Cornell Univ.*,
    889 F. Supp. 2d 539 (S.D.N.Y. 2012) ......................................... 41, 43

*Monahan v. New York City Dep't of Corr.*,
    214 F.3d 275 (2d Cir. 2000) ........................................................21

*MTV Networks v. Lane*,
    998 F. Supp. 390 (S.D.N.Y. 1998) ...............................................17

*Nationwide Mut. Ins. Co. v. Mortensen*,
    606 F.3d 22 (2d Cir. 2010) .........................................................13

*Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.*,
    205 F. App'x 858 (2d Cir. 2006) .................................................34

*Perry v. NYSARC, Inc.*,
    424 F. App'x 23 (2d Cir. 2011) ...................................................37

*Reed v. A.W. Lawrence & Co.*,
    95 F.3d 1170 (2d Cir. 1996) .......................................................24

*Richards-Byers v. New York City Dep't of Fin.*,
    449 F. App'x 55 (2d Cir. 2011) ...................................................32

*Risco v. McHugh*,
    868 F. Supp. 2d 75 (S.D.N.Y. 2012) ............................................16

*Sassaman v. Gamache*,
    566 F.3d 307 (2d Cir. 2009) .......................................................12

*Scott v. Harris*,
    550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) ...................29

*Shanahan v. New York*,
    10 CIV 0742, 2011 WL 223202 (S.D.N.Y. Jan. 24, 2011) ..................37

*Shepherd v. BCBG Max Azria Grp., Inc.*,
    11 CIV 7634 (RJS)(AJP), 2012 WL 4832883 (S.D.N.Y. Oct. 11, 2012) ..... 32, 33

*Sundaram v. Brookhaven Nat. Labs.*,
  424 F. Supp. 2d 545 (E.D.N.Y. 2006) ................................................39

*T.Y. v. New York City Dep't of Educ.*,
  584 F.3d 412 (2d Cir. 2009) ...........................................................22

*Thomsen v. Stantec, Inc.*,
  483 F. App'x 620 (2d Cir. 2012) .....................................................16

*Travelers Indem. Co. of Illinois v. Hunter Fan Co.*,
  99 CIV 4863 (JFK), 2002 WL 109567 (S.D.N.Y. Jan. 28, 2002).......................17

*U.S. S.E.C. v. Svoboda*,
  409 F. Supp. 2d 331 (S.D.N.Y. 2006) ................................................19

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
  133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013)..........................................31

*Van Alstyne v. Ackerley Grp., Inc.*,
  8 F. App'x 147 (2d Cir. 2001) .......................................................22

*Watt v. New York Botanical Garden*,
  98 CIV 1095 (BSJ), 2000 WL 193626 (S.D.N.Y. Feb. 16, 2000) ......................16

**Federal Statutes**

28 U.S.C. § 1291 ........................................................................4

28 U.S.C. § 1331 ........................................................................4

29 U.S.C. § 201 et seq...................................................................2

29 U.S.C. § 206 .........................................................................4

29 U.S.C. § 206(d) ...................................................................2, 11

29 U.S.C. § 206(d)(1)...................................................................41

29 U.S.C. § 216(b) ......................................................................4

42 U.S.C. § 1981 ........................................................................2

42 U.S.C. § 2000e et seq.................................................................2

42 U.S.C. § 2000e-5(f)(3) ...................................................................................4

**Federal Rules**

Rule 56 of the Federal Rules of Civil Procedure ...................................... 12, 13, 14

Rule 56(a) of the Federal Rules of Civil Procedure ...................................... 13, 14

Rule 56(c) of the Federal Rules of Civil Procedure ...................................... 13, 14

U.S. Dist. Ct. Rules S. & E.D.N.Y., Civ. Rule 56.1.......................................*passim*

**Federal Regulations**

29 C.F.R. § 1620.13(e)...............................................................................43

## PRELIMINARY STATEMENT

Appellants JAD Transportation, Inc. ("JAD") and CityScape Tours, Inc. ("CityScape") (collectively, "Appellees" or "JAD Appellees") submit this brief in opposition to the appeal of Plaintiff-Appellant Denise O. Suares ("Suares"), and in support of affirming the final Judgment entered on March 14, 2014 (the "Judgment") by the United States District Court for the Southern District of New York. The Judgment denied Suares' motion for summary judgment, granted JAD's and CityScape's motion for summary judgment, and granted the motion for summary judgment filed by co-appellee City Sights New York LLC ("City Sights").

Appellant's focus is trained on two narrow areas, despite the fact that she claims to be appealing the Judgment in its entirety. First, Appellant argues extensively that the JAD Appellees and City Sights were joint employers. This argument attacks the underlying summary judgment motion of co-appellee City Sights and thus is the focus of its papers on appeal. The JAD Appellees join in and incorporate by reference all arguments made by City Sights on that issue.

Second, in lieu of directing the Court to record evidence supporting the merits of her dismissed claims, Appellant essentially argues that her claims were dismissed on a mere "technicality", and that her blatant failure to comply with Federal and Local Civil Rules of Procedure should be excused. This argument

1

misrepresents the extensive factual and legal analysis performed by the District Court on the underlying motion.  JA 1260-1280.  Accordingly, in addition to rebutting Appellant's procedural argument, this brief will set forth the relevant facts and legal arguments in order to assist this Court with its *de novo* review of the Judgment.

This action was commenced on August 15, 2011.  JA 46-57.[1]  The Complaint asserts federal claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.("Title VII") for sexual harassment, retaliation and unequal pay; the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"), which is part of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), for unequal pay; and under 42 U.S.C. § 1981[2] for race discrimination, based on the alleged failure of JAD to provide Appellant with the name and address of the alleged harasser.  On February 16, 2012, Appellant amended the Complaint to add Chandreshakar Singh ("Singh"), the alleged harasser, as an individual defendant.  JA 60-74.

---

[1]  All references to "JA" refer to the Joint Appendix filed by Appellant on July 7, 2014 with her Opening Brief.  The JAD Appellees note that despite being denominated as a "Joint Appendix", Appellant flouted appellate rules and procedures by failing to confer with Appellees in preparing the Joint Appendix.

[2]  In Plaintiff's Memorandum of Law in Support of Summary Judgment, dated April 30, 2013, Plaintiff "disavowed" her race claim made pursuant to 42 U.S.C. § 1981, and it is not at issue now.  JA 759, n.1; see also JA 1266 (District Court holding claim was withdrawn).

The crux of Appellant's case involves a single encounter with a co-worker at a holiday party on January 12, 2010. Plaintiff reported the incident to management, which resulted in the co-worker's immediate termination on January 18, 2010. The incident served as the basis for Appellant's (1) filing on April 6, 2010 of a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment (the "Initial Charge") (JA 76-80), (2) filing on September 7, 2011 of an Amended Charge alleging retaliation (JA 81-3) and, ultimately, (3) the filing of this federal lawsuit. The EEOC dismissed Appellant's charges in their entirety. JA 58-9.

This Court should affirm the District Court's Judgment which (1) denied Appellants' motion for summary judgment, and (2) granted summary judgment in favor of the JAD Appellees and CitySights. JA 1260-80. The District Court properly denied Appellant's motion for summary judgment due to the numerous procedural deficiencies in her submission, including (1) her failure to identify the claim or claims on which summary judgment was sought, (2) her failure to support her motion with citations to admissible evidence in the Record, and (3) her failure to submit a properly-cited Local Rule 56.1 Statement. The District Court was also correct to grant summary judgment dismissing Suares' legal claims against the Appellees. Based on the Record below, there is no genuine issue of material fact that (1) JAD provided a reasonable avenue of complaint for Appellant's

harassment claim, and took prompt and effective remedial action following her complaint, (2) Appellant did not suffer any adverse action as a result of her protected activity; indeed, the Record establishes that she was treated in the same fashion as those to whom she was similarly situated, (3) Appellant failed to exhaust her administrative remedies with respect to her Title VII claim of unequal pay, and (4) there is no evidence in the Record to establish a claim for unequal pay in violation of the EPA.  The District Court also properly granted City Sights' motion for summary judgment.

## STATEMENT OF JURISDICTION

The District Court had jurisdiction over all of Appellant's federal claims pursuant to 28 U.S.C. § 1331.  The District Court also had jurisdiction over the Title VII claims pursuant to 42 U.S.C. § 2000e-5(f)(3), and the claims under the FLSA and EPA pursuant to 29 U.S.C. § 216(b) and 29 U.S.C. § 206.  On March 14, 2014, the District Court issued a Decision and Order and entered summary judgment for Appellees dismissing all of Appellant's claims.  JA 1260-1281.  On May 3, 2014, Appellant filed her Notice of Appeal of the District Court's decision.  This Notice of Appeal was subsequently amended on May 27, 2104.  JA 1284-6.  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because this appeal is from a final judgment that disposed of all parties' claims.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

(1) Whether the District Court properly denied Appellant's motion for summary judgment by reason of her failure to provide proper factual support for the motion, as required by the Federal Rules of Civil Procedure and the Local Civil Rules for the Southern District of New York.

(2) Whether the District Court properly granted the summary judgment motion of the JAD Appellees, dismissing Appellants' claims for sexual harassment, retaliation and unequal pay under Title VII, and her claim of unequal pay under the EPA.

## STATEMENT OF THE FACTS

JAD Transportation, Inc., a New York corporation owned by Janet West, leases Tour Guides, Ticket Agents, Drivers, Dispatchers, and certain managerial employees to CitySights, which operates double-decker buses that provide "hop on, hop off" sightseeing tours through New York City.[3]  JA 337 [West Aff.][4] at ¶¶

---

[3]  Prior to February 2009, Tour Guides were leased to CitySights by CityScape Tours, Inc., another entity owned by Ms. West.  Ms. West consolidated operations in 2009 and discontinued CityScape Tours at that time.  JA 337 [West Aff.] at ¶¶ 8-12.  Accordingly, references throughout this brief will be made only to JAD and not to Cityscape, as that entity was not operational at the times relevant to this matter.

[4]  References to the Affidavit of Janet West in Support of Defendants Cityscape and JAD's Motion for Summary Judgment, sworn to May 3, 2013 are in the form "JA __ [West Aff.] at ¶ __."

4-6.[5]  Tour Guides, Ticket Agents and Drivers are all represented by a Union and subject to the terms of a collective bargaining agreement between JAD and the Union.  JA 38 at ¶¶ 160-161.

Appellant was hired on October 9, 2007, as a Tour Guide.  JA 337 [West Aff.] at ¶ 13.  Tour Guides are licensed by the New York City Department of Consumer Affairs.  JA 343 [West Aff.] at ¶51.

Defendant Singh was formerly employed by JAD as a dispatcher, working at various bus stop locations to coordinate customer flow and bus operations to maintain the tour bus schedule.  JA 338 and 344 [West Aff.] at ¶¶ 16 and 59.  Dispatchers are not supervisory personnel.  JA 344 [West Aff.] at ¶ 60.

## Title VII Harassment and Retaliation Claims

Appellant claims she was sexually harassed at a company holiday party on Tuesday January 12, 2010 when Singh "leapt into [her] lap," "straddled" her thighs, placed his right leg over her left shoulder, then pulled her face toward his "swollen" crotch and repeatedly thrust his genitalia into her face.  JA 64-65, at ¶¶ 27-30.

---

[5]  The JAD Appellees' Rule 56.1 Statement of Undisputed Material Facts, dated May 3, 2013 (JA 18-42), cited to various deposition transcripts, supporting affidavits and evidence.  Rather than cite to the 56.1 Statement in this brief, the JAD Appellees direct the Court to the record cites of the underlying evidence.

Appellant reported the incident to management on January 14 when she met with her direct supervisor, Tim Ries ("Ries"), and spoke to him about the incident. JA 104 [Suares Dep.][6] at 183:21-184:5. Ries responded by stating that the company would "not tolerate" this behavior, and that he would contact the Human Resources Director, Michael Booker ("Booker"); he also asked Appellant to describe the incident in writing, and whether she could attend a meeting regarding the incident, after the weekend, on Monday, January 18. JA 104 [Suares Dep.] at 184:8-18. Suares wrote an Incident Report, as requested by Ries, but did not present it to JAD until January 18, when she gave it to Booker. JA 108-109 [Suares Dep.] at 209:19-210:4; JA 499 [Booker Aff.][7] at ¶ 12; and JA 510. Booker read the Incident Report and stated to Appellant that the company would not tolerate such behavior. JA 108-109 [Suares Dep.] at 206:7-9 and 210:11-16; JA 500 [Booker Aff.] at ¶ 14. Booker then called Singh's supervisor, Rodney Trahan, and as Appellant herself testified, Booker "said, I want him removed—relieved from the schedule. That's the word he used. He terminated him." JA 109 [Suares Dep.] at 210:12-16. Booker spoke with Singh on January 18, and Singh told

---

[6]  References to the excerpted testimony from the deposition of Denise O. Suares, sworn to on April 6, 2012 and August 14, 2012 are in the form "JA __ [Suares Dep.] at __:__ - __:__."

[7]  References to the Affidavit of Michael Booker, in Support of Defendants Cityscape and JAD's Motion for Summary Judgment, sworn to May 3, 2013, are in the form "JA __ [Booker Aff.] at ¶ __."

Booker that he had no recollection of the incident.  JA 500 [Booker Aff.] at ¶ 17.

After a conversation with Janet West, Booker terminated Singh's employment

immediately at the meeting on January 18.  JA 353 (Singh's Termination Notice

dated January 18, 2010); JA 500 [Booker Aff.] at ¶ 18-19; and JA 338 [West Aff.]

at ¶¶ 17-18.

　　　After taking a short leave of absence, Suares met with Booker again on

January 29, 2010, at which time Booker informed Suares that Singh had been

terminated.  JA 500-501 [Booker Aff.] at ¶ 20.  Suares demanded Singh's full

name and address.  Id.  Booker declined to provide any information other than that

Singh had been terminated.   JA 67 ¶ 55; JA 500-1 [Booker Aff.] at ¶¶ 20-21.

　　　Appellant claims that after she reported the incident with Singh, she was

given inferior schedules and removed from tours, resulting in a loss of pay.  JA 69

at ¶ 67.  She also alleges that she was subjected to a hostile work environment in

retaliation for her claims.  JA 82-3; JA 125 [Suares Dep.] at ¶ 323:2- 323:16.

　　　Appellant filed her Initial Charge with the EEOC on April 6, 2010, alleging

gender discrimination, based on the incident involving Singh at the January 12

party.  JA 76-80; JA 114-16 [Suares Dep.] at 266:4-267:13 and 287:25-290:17.

The Initial Charge was mailed to Defendants by the EEOC on April 29, 2010.  JA

75.  On September 7, 2010, Appellant filed an Amended Charge with the EEOC,

asserting that she had been retaliated against for having initially reported the

incident, and for filing the Initial Charge. JA 81-3; JA 117 [Suares Dep.] at 291:3-293:13. After a lengthy investigation including numerous information requests, the EEOC issued a Dismissal and Notice of Rights on May 17, 2011, in which Suares' Initial Charge and Amended Charge were dismissed. JA 58-9. The EEOC stated that "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained established violations of the statutes." Id.

**Equal Pay Claims Under Title VII and the EPA/FLSA:** Appellant also alleged that she had been discriminated against on the basis of her sex because she makes less money and receives fewer benefits than "male employees," whom she has identified in her depositions as Dispatchers, Ticket Agents, Supervisors and a small number of Tour Guides who receive a "guaranteed" touring rate of pay. JA 69-70 at ¶¶ 68-73; JA 95-6 and 98 [Suares Dep.] at 126:3-129:8, 129:13-131:17 and 139:24-141:13.

## SUMMARY OF ARGUMENT

**Title VII Claims.** Appellant's Title VII sexual harassment claim fails because even if the single alleged incident constituted sexual harassment, the conduct of a co-worker cannot be imputed to the company in these circumstances.

Case law establishes that an employer is liable for a non-supervisor's conduct only if the employer failed to provide a reasonable avenue for complaint

or if it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action.

Summary judgment was properly granted because there is no genuine dispute that JAD provided a reasonable avenue for complaint and took prompt, effective, remedial action.  Singh was terminated on the day Suares submitted a written complaint, less than one week after the incident.  Suares did not claim to be confused or concerned about her ability to reach management, and the undisputed evidence in the Record showed that she in fact knew how to make a complaint.  Further, there is also no genuine issue of material fact that JAD took remedial action more than sufficiently calculated to end the harassment, by immediately ending Singh's employment.

The District Court also properly granted summary judgment on Appellant's Title VII retaliation claim.  While she complained of a "loss of pay" based on being put on a schedule commencing at 3:45 in the afternoon, immediately after she complained of harassment, the Record establishes that Appellant was placed on this schedule about one week prior to the harassment incident, not after she complained.

Appellant also asserts that she suffered a loss of pay in 2010 following her harassment complaint.  While it is true that Plaintiff earned about $7,000 less in 2010 than 2009, the Record establishes that other Tour Guides, both male and

female, with a comparable level of seniority and no history pf protected activity, suffered comparable or even larger reductions in pay between 2009 and 2010, for legitimate business reasons.

The hostile work environment harassment claim asserted by Appellant was also properly rejected by the District Court. Most of the examples provided are isolated and infrequent, while others (e.g. that a Supervisor instructed drivers to operate the bus at an excessive speed in an attempt to injure Appellant) are improbable.

Appellant's Title VII unequal pay claim does not appear to be the subject of this appeal, but it was properly dismissed as well. The District Court properly determined that Appellant failed to raise this issue with the EEOC, which is a pre-requisite to asserting the claim in this action, and that this claim was not "reasonably related" to the harassment and retaliation claims she did raise before the EEOC. To the extent her administrative remedies were exhausted, Appellant's claim is still not viable, as she cannot establish a genuine issue of material fact that she was treated differently on the basis of sex.

**EPA/FLSA Claims.** The EPA prohibits gender based pay differentials for "equal work on jobs the performance of which requires equal skill, effort, and responsibility and which are performed under similar working conditions." 29

U.S.C. § 206(d).  Differences are permitted if based on "any other factor other than sex." *Id.*

As noted by the District Court, Appellant virtually ignored this claim in both moving for and opposing summary judgment; Appellant appears to ignore the claim on this appeal as well.  In the absence of evidence in support of this claim, the District Court properly granted summary judgment dismissing the claim.

The Record establishes that this claim is not viable.  During discovery Appellant identified eight (8) male Tour Guides who received a "guaranteed" daily rate, as opposed to a straight hourly rate for hours worked, and claims a violation of the Equal Pay Act on this basis (referred to as "bidded" Tour Guides).  Even if true, the fact that eight male Tour Guides received a "guaranteed" rate fails to establish the existence of a gender based pay differential, as the Record establishes that a large number of Tour Guides were male.  Hence, this practice impacted male employees in the same manner it impacted Appellant and other female employees.

## POINT I

## THE STANDARD OF REVIEW

The District Court's decision to deny Appellant's summary judgment motion, but grant summary judgment to all Appellees under Rule 56 of the Federal Rules of Civil Procedure, is subject to *de novo* review by this Court.  *Sassaman v. Gamache*, 566 F.3d 307, 312 (2d Cir. 2009); *Allianz Ins. Co. v. Lerner,* 416 F.3d

12

109, 113 (2d Cir. 2005). The admissible evidence in the Record is to be construed in the light most favorable to the non-moving party, resolving all ambiguities and drawing all reasonable inferences against the moving party. *Aulicino v. New York City Dep't of Homeless Servs.*, 580 F.3d 73, 79-80 (2d Cir. 2009). If this Court determines that there is no issue of material fact and that the moving party is entitled to judgment as a matter of law, the District Court's judgment should be affirmed. *Nationwide Mut. Ins. Co. v. Mortensen*, 606 F.3d 22, 28 (2d Cir. 2010) (*citing* Fed. R. Civ. P. 56(c)). A party that does not establish an essential element of its claim has failed to meet its burden of proof, rendering summary judgment appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

## POINT II

### THE DISTRICT COURT PROPERLY DENIED APPELLANT'S SUMMARY JUDGMENT MOTION

#### A. Appellant Failed to Adhere to Federal Rule of Civil Procedure 56

The District Court properly denied Appellant's motion for summary judgment due to the procedural deficiencies in her submission. Appellant either abandoned or ignored her obligations pursuant to the Federal Rules of Civil Procedure and the Local Civil Rules for the Southern District of New York ("Local Rules"), warranting denial of her motion.

13

Both the Federal Rules of Civil Procedure and the Local Rules specify what is required of a party moving for summary judgment.  Rule 56(a) of the Federal Rules of Civil Procedure requires that a movant "identify each claim or defense – or the part of each claim or defense – on which summary judgment is sought." *Fed. R. Civ. P. 56(a)*.  Rule 56(c) of the Federal Rules of Civil Procedure requires that a "party asserting that a fact cannot be…genuinely disputed must support this assertion by…(A) citing to particular parts of materials in the record,…or (B) showing that materials cited do not establish the…presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c).  The Local Rules provide a more specific description of what is required, that is, "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civil Rule 56.1(a).

As set forth in the District Court's opinion, Appellant's motion failed to satisfy each of these requirements.  JA 1266-1267.  First, Appellant failed to identify the claim or claims on which summary judgment was sought as required by Fed. R. Civ. P. 56(a), (JA 1266), and her memorandum of law failed to "rectify the confusion."  Id.

There is ample evidence in the record to support the District Court's conclusion.  Appellant's Notice of Motion simply states that she "moves the Court

14

for an Order granting Summary Judgment pursuant to a Conference Order and Rule 56 of the Federal Rules of Civil Procedure". JA 702. As Appellant asserted at least three distinct claims, the District Court and the Appellees were left to speculate as to which claims were included in the motion.[8]

According to the District Court, Appellant's moving papers also "frequently fail[ed]" to provide citations "to particular parts of materials in the record", show the absence of a genuine issue of material fact, or demonstrate that Appellees' "cannot produce admissible evidence to support" their contentions. JA 1266-1267.

There are numerous examples in the Record supporting this conclusion as well. In support of the underlying motion and on this appeal, Appellant cites heavily to allegations in her Complaint and Amended Complaint, without reference to other Record evidence. See, e.g., JA 759-60 and App. Br.[9] at 5 citing JA 50 at ¶¶ 30, 31, 32, 33, 34 (regarding the number of attendees at the holiday party where the incident between Suares and Singh occurred); JA 760 and App. Br. at 5-6 citing JA 50-51 at ¶¶ 35-46 and JA 65-7 at ¶¶ 37-49 (regarding a meeting that allegedly occurred between Suares and two JAD managers, Rodney Trahan and Colin West on January 18). In some cases, Appellant cited her pleadings for

---

[8] This task was complicated by Appellant's reference in her underlying moving papers to "race, color and religious based allegations." JA 759, n. 1. Appellant never raised any religious based claims, and "disavowed" her race claim. *Id.*

[9] All references to Appellant's Brief dated July 7, 2014 are in the form "App. Br. ____."

factual propositions not supported by the pleading.  See, e.g., JA 762 and App. Br. at 7 citing JA 51 at ¶49 and JA 67 at ¶52 (regarding assertion that Booker told Appellant that Singh was too drunk to be responsible for his conduct).

Appellant's reliance on the pleading allegations is, however, unavailing; a movant must do more than merely repeat allegations in a Complaint in order to be entitled to summary judgment.  *Ayuso v. Amerosa*, 05 CIV 0163 (GLS), 2008 WL 141862, at *3 (N.D.N.Y. Jan. 11, 2008); *see also Thomsen v. Stantec, Inc.*, 483 F. App'x 620, 623 (2d Cir. 2012) (held "conclusory assertions, unsupported by record…insufficient to survive summary judgment.")

As the District Court noted, Appellant also failed to comply with Local Rule 56.1(d), by failing to provide citations to the Record in support of the factual assertions she presented.  JA 1267.  This is a particularly egregious error.  "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties."  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001); *see also Risco v. McHugh*, 868 F. Supp. 2d 75, 86 n.2 (S.D.N.Y. 2012); *Watt v. New York Botanical Garden*, 98 CIV 1095 (BSJ), 2000 WL 193626, at *1 n.1 (S.D.N.Y. Feb. 16, 2000).  The absence of citations in the Rule 56.1 Statement violated Rule 56.1(d) and failed to "streamline" the process, instead requiring "the other parties and the Court to traverse the record for

the omitted sources."[10]  JA 1267.  This omission made the District Court's task

"considerably more difficult than it should have been."  *In re Agent Orange Prod.*

*Liab. Litig.*, 517 F.3d 76, 85 n.7 (2d Cir. 2008).  Due to the lack of citations in the

56.1 statement, "the Court [was] free to disregard the assertions therein." *Holtz*,

258 F.3d at 73; *see also Travelers Indem. Co. of Illinois v. Hunter Fan Co.*, 99 CIV

4863 (JFK), 2002 WL 109567, at *6 (S.D.N.Y. Jan. 28, 2002) (court noting that

failure of movant to comply with Rule 56.1 constitutes grounds for denial of

motion); *see also MTV Networks v. Lane*, 998 F. Supp. 390, 393 (S.D.N.Y. 1998.

Accordingly, it was appropriate for the District Court to deny Appellant's

summary judgment motion.

---

[10] Where, on the underlying motion, Appellant attempted to remedy the
deficiencies in her 56.1 Statement by citing documentary evidence or deposition
testimony in her brief, those citations were often incongruous to the argument
presented by Appellant, or simply misconstrued the record.  For example,
Appellant cited to an Incident Report dated January 15, 2010 for allegations that
were not supported by that document.  See, e.g., JA 761 (repeated in App. Br. at 6)
(first paragraph and second paragraph).  Appellant cites the Incident Report for the
proposition that she and her supervisor, Tim Reis, met to discuss the alleged
harassment on an unspecified date, and also cites it to support allegations regarding
an alleged meeting between Appellant, Ries and Trahan.  JA 761 and App. Br. at 6.
The Incident Report, however, does not reference these allegations.  JA 510.

**POINT III**

**THE DISTRICT COURT PROPERLY GRANTED THE JAD APPELLEES'
MOTION FOR SUMMARY JUDGMENT**

### A. Appellant's Failure to File A Counter-Statement Pursuant To Local Rule 56.1(b) Was Properly Considered By The District Court

In opposition to Appellee's summary judgment motion, Appellant failed to comply with Local Civil Rule 56.1(b), which requires the submission of a counter-statement "correspondingly numbered … responding to each numbered paragraph in the [56.1(a)] statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried." *Local Rule 56.1(b)*.  Unlike her own summary judgment motion, where Appellant submitted a 56.1(a) statement but without any citations to facts in the Record[11], Appellant ignored her obligation pursuant to Local Civil Rule 56.1(b) altogether, failing to submit a 56.1(b) counter-statement.  JA 1262.  As a result of this failure, as set forth in Local Rule 56.1(c), the District Court deemed "[e]ach numbered paragraph in the statement of material facts set forth in [each defendants' 56.1] statement…admitted for purposes of the motion."  *Id.*

The District Court's decision on this point was consistent with the Local Rules and Second Circuit precedent.  "A district court has broad discretion to

determine whether to overlook a party's failure to comply with local court rules." *Holtz*, 258 F.3d at 73.  The District Court did not abuse its discretion here.  *Id.*; *U.S. S.E.C. v. Svoboda*, 409 F. Supp. 2d 331 n.1 (S.D.N.Y. 2006); *Archie Comic Publications, Inc. v. DeCarlo*, 258 F. Supp. 2d 315, 319 (S.D.N.Y. 2003) (facts set forth in 56.1 statement were deemed "established" and "undisputed" where adverse party failed to provide proper response to 56.1 statement).

Appellant argues, however, that Local Civil Rule 56.1(b) should be waived, asserting that it "is a rule and not a statute" and imposes a "manifestly unfair" burden on litigants who are "less financially endowed" than their adversaries. App. Br. at 18-19.  According to Appellant, the District Court's decision allowed "Appellees to eviscerate Appellant's case…[and] treated Appellant's papers as if they did not exist."  App. Br. at 18.

This argument mischaracterizes the District Court's analysis of Appellees' motions and Appellant's opposition.

The District Court opinion is lengthy, and contains numerous references to the arguments and evidence put forth by Appellant in her opposition papers below.[12]  The District Court, in fact, followed well-established precedent in this

---

[12]  See, e.g., JA 1271 ("Plaintiff argues that the Defendants created a hostile work environment through an unsympathetic and insufficient response to Singh's assault on the Plaintiff at the company holiday party."); JA 1273 ("Plaintiff claims that 'Defendants' affirmative defense that…corrective actions were taken…to correct the conduct…are not supported by the facts.'"); JA 1273 ("Plaintiff argues that the

Circuit, and did not "blindly accept Appellees' 56.1 Statements at face value."  JA

1262.  Instead, following *Holtz* and other cases, the District Court reviewed the

Appellees' 56.1 Statements and "disregarded allegations that were 'not

accompanied by citation to admissible evidence' and allegations where 'the cited

evidence [did] not support the allegation."  JA 1262.

        Appellant also argues that it was burdensome for her to respond to

Appellees' 56.1 Statement, consisting of 24 pages setting forth 187 statements of

---

hostile work environment may be imputed to the Defendants because '[a]n
employer is subject to vicarious liability to a victimized employee for an actionable
hostile environment created by a supervisor with…authority over the
employee…Plaintiff states that '[v]icarious liability also applies automatically
'when the supervisor's harassment culminates in a tangible employment action,'
and suggests the Defendants are liable for various 'tangible employment actions'
taken by Rodney Trahan, as her supervisor.  However, Plaintiff provides no
explanation or evidence for how Trahan crated a hostile work environment or acted
as a 'harassing supervisor.'"); JA 1275 ("Plaintiff's opposition memorandum is
unclear, fails to distinguish between claims, appears to ignore the relevant
doctrines, and only implicitly offers an argument for maintaining the retaliation
claim.  While Plaintiff's affidavit and papers in support of her summary judgment
motion are clearer, for the reasons explained below, she still fails to generate a
triable issue precluding summary judgment."); JA 1275 ("Plaintiff's main
retaliation claim is that JAD retaliated against her by reducing her hours, thereby
reducing her wages."); JA 1276 ("Plaintiff also alleges that JAD retaliated against
her by changing her schedule in various ways."); JA 1276 ("Plaintiff alleged that
her spring 2010 schedule of 8:20 AM shifts Friday through Monday was 'not in
accordance with [her] preference and not in accordance with seniority.'"); JA 1277
("Plaintiff also alleges retaliation occurred when her buses were off-loaded
downtown ("deadheading" or "dead-ending").  It appears deadheading may be one
of the methods Plaintiff alleges the Defendants used to reduce her hours and
wages, and the Court assumes arguendo that Plaintiff offered a prima facie case of
retaliation."); JA 1277 ("Plaintiff's other retaliation allegations include complaints
of hostile actions and gestures by co-workers.")

undisputed fact, claiming that Appellees were engaged in "stealthy

tactics…requiring an inordinate amount of time in rebutting all manner of

assertions."  App. Br. at 16 and 18.  The District Court properly rejected a similar

contention asserted below, noting that Appellees "complied with the Court's

Individual Rules that such statements are limited to no more than 25 pages" while

in contrast "[Appellant's] statement requires the other parties and the Court to

traverse the record for the omitted sources."  JA 1267.  While Appellant also

contends that she "could not respond the [sic] within the timeframe [sic] constraint

fixed," (App. Br. at 16) the docket sheet shows that Appellant requested and

received a two-week extension to submit her opposition papers.  JA 11 at docket

entry 85.[13]  Appellant did not request or pursue any other extensions.

Appellant is essentially asking this Court to condone what amounts to an

overwhelming disregard of applicable rules and procedures.  Given the well-

established precedent in this Circuit regarding the significance of a failure to

comply with Rule 56.1, she is not entitled to such relief.  *Monahan v. New York

City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000).  The District Court did not

act erroneously or abuse its discretion by adhering to Local Rule 56.1(c) and

deeming the facts set forth in Appellees' 56.1(a) statement as admitted for

---

[13]  Although not clearly at issue on this appeal since Appellant has not addressed
the underlying merits of the summary judgment motion, to the extent Appellant
takes issue with specific factual determinations by the District Court, these will be
addressed *infra* at Points III.B., IV., and V.

purposes of the motion.  *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 418

(2d Cir. 2009).

## B. The District Court Properly Concluded That There Is No Basis To Impute The Offending Conduct To Appellees

In order to demonstrate an employer's violation of Title VII for hostile work

environment sexual harassment by a non-supervisory employee, a Plaintiff must

show "(1) that the harassment was sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working

environment,[14] and (2) that a specific basis exists for imputing the objectionable

conduct to the employer."  *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002).

To survive "a motion for summary judgment dismissing a claim of sexual

harassment in the nature of a hostile work environment, a plaintiff must present

evidence sufficient to permit a rational trier of fact to find [both] elements"

necessary to establish a claim of a hostile work environment.  *Van Alstyne v.*

*Ackerley Grp., Inc.*, 8 F. App'x 147, 151 (2d Cir. 2001).

---

[14]  It was undisputed, for purposes of the underlying motion, that Singh sexually assaulted Appellant.  Hence, the District Court concluded that "[a] rational jury could therefore find that that conduct was sufficiently severe, and resulted in an intolerable alteration of Suares' working conditions. (citations omitted)."  JA 1272.

## 1. JAD Appellees Provided a Reasonable Avenue of Complaint and Took Prompt and Effective Remedial Action

The District Court properly applied the relevant standard and concluded that Appellant failed to establish the second prong of the "hostile work environment" test, which requires a specific basis for imputing a co-worker's[15] conduct to the employer. *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000). As the District Court noted: "When harassment is perpetrated by the plaintiff's coworkers, an employer will be liable if the plaintiff demonstrates that the employer provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." JA 1272; *Howley*, 217 F.3d at 154; *McArdle v. Arms Acres, Inc.*, 03 CIV 05721(PGG), 2009 WL 755287, at *7 (S.D.N.Y. Mar. 23, 2009).

Here, the District Court correctly concluded that Appellees provided a "reasonable avenue for complaint" and took immediate and appropriate remedial action, such that a reasonable jury could not conclude that Singh's conduct should be imputed to them. JA 1273-74.

On appeal, Appellant appears to take issue with the District Court's conclusion that a reasonable avenue of complaint existed despite the absence of an

---

[15]  There is no dispute that Singh was Appellant's co-worker, not a supervisor. JA 1263; JA 338 and 344 [West Aff.] at ¶¶ 16 and 60.

employee handbook.  App. Br. at 15; JA 1273.  This conclusion, however, is not erroneous.  "There is no basis for a *per se* rule that the absence of a written sexual harassment policy, standing alone, permits a finding that the employer has failed to provide [a] reasonable avenue for complaint or that the employer knew of the harassment but did nothing about it."  *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1180 (2d Cir. 1996) (citation and marks omitted).  Indeed, "even where an employer has no formal sexual harassment policy, a court may still find, as a matter of law, that an employer provided a 'reasonable avenue of complaint' if the evidence shows that the plaintiff in fact knew how to make a complaint and that the complaint was adequately addressed."  *McArdle*, 2009 WL 755287, at *8 (emphasis in original) (holding "no reasonable jury could find" that defendants failed to provide a reasonable avenue for complaint where plaintiff's complaint to supervisors of alleged harassment by a co-worker led to "corrective action that effectively ended" the harassing conduct as co-worker was instructed not to engage in inappropriate conduct and to announce himself when entering the unit where plaintiff worked); *see also Borrero v. Collins Bldg. Servs., Inc.*, 01 CIV 6885 (AGS), 2002 WL 31415511, at *12-13 (S.D.N.Y. Oct. 25, 2002) (dismissing a Title VII claim, held defendants provided a reasonable avenue for complaint where the plaintiff reported the alleged harassment without any "confusion" or "concern"

about her ability to reach management); *Donovan v. Big V Supermarkets, Inc.*, 98 CIV 2842 (AGS), 1999 WL 615100, at *5-7 (S.D.N.Y. Aug. 12, 1999).

Here, as in *McArdle* and *Borrero*, the Record establishes the existence of a reasonable avenue for complaint -- an effective and speedy one – of which the Appellant was obviously aware and took full advantage.  Appellant never claimed the slightest confusion or concern about how or who to reach out to regarding the incident.  JA 79 (Initial Charge stating Plaintiff "immediately reported" the incident to Booker); JA 65 at ¶ 36; see also JA 104 [Suares Dep.] at 183:21-25. Moreover, the Record conclusively demonstrates that Appellant was no stranger to Appellees' open door policy, having lodged complaints, or having them lodged against her, on numerous occasions, and acknowledging to Booker just one year prior to this incident that she knew his "doors are open if there is a problem."  JA 502; JA 503-9 (sample prior complaints); JA 499 [Booker Aff.] at ¶¶ 5-10.[16]

---

[16] There were other avenues of complaint as well.  As a Tour Guide, Appellant was in a bargaining unit whose terms and conditions of employment were covered by a collective bargaining agreement ("CBA") between JAD and Local 1212, Service Employees International Union (JA 443-73; JA 38 at ¶ 160; JA 344-45 [West Aff.] at ¶ 62), and that CBA had a mechanism for filing grievances JA 347 [West Aff.] at ¶ 81.  While Appellant disputes the existence of this union and its grievance mechanism (App. Br. at 14), the evidence she submits is contradictory and fails to raise a genuine issue of fact.  For example, Appellant relies on the affidavit of Erica Hawkins, whose claim that "[w]e had no union representation" is squarely contradicted by other averments in her affidavit that she "participated in collective bargaining" and "that a CBA was introduced in 2009."  JA 936-937 [Affidavit of Erica Hawkins, in Opposition to Defendants' Motions for Summary Judgment, sworn to May 29, 2013 ("Hawkins Aff.")] at ¶¶ 50, 59 and 61.

The District Court correctly found it to be undisputed that Appellee efficiently addressed, handled and remedied the harassment claim.  As is obvious from the facts, within days of learning of the incident, Appellee JAD had met with Appellant, conducted an investigation and terminated the offending co-worker.  JA 108-109 [Suares Dep.] at 206:7-9 and 208:23-210:16 (according to Suares, Booker stated in the January 18 Meeting: "I'm sorry to hear what happened to you…[H]e said we can't tolerate this.  He called up to Rodney Trahan and said, I want him removed – relieved from the schedule…..He terminated him.").  Appellant in fact attested to the effectiveness of Appellee's action:  she had neither seen nor had any contact with her alleged harasser since the day of the incident and she had lodged no other complaints of sexual harassment.  JA 107 [Suares Dep.] at 198:9-14 and 200:4-25.

As she did below, Appellant attempts to manufacture a genuine issue of material fact as to whether Appellees took effective remedial action by suggesting that Singh was not terminated.  She argues that (i) the date of "termination" is disputed; (ii) there is no actual "termination" notice; and (iii) Appellees' failure to contest Singh's application for unemployment insurance suggests that he was not in fact terminated for his conduct on January 12.  App. Br. at 15.  Nevertheless, the District Court correctly found that JAD "adequately addressed" the Complaint

through a "swift termination" of Singh.  JA 1274.  The District Court was correct

since each argument fails to raise a genuine issue of material fact.

First, Appellant's contention that there is a question about Singh's

termination is, itself, suspect, as it contradicts her own testimony.  As found by the

District Court, on January 18, Booker called Singh's supervisor, Rodney Trahan,

and directed him to have Singh "'removed-relieved from the schedule,' which in

JAD parlance means fired."  JA 1264; JA 500 [Booker Aff.] at ¶ 16; JA 109

[Suares Dep.] at 210:12-16; JA 152 [Singh Dep.] at 67:5-9.  Appellant understood

this to mean that Singh was terminated.  JA 107 [Suares Dep.] at 200:17-21.

Furthermore, the District Court found, that Booker met with Singh "that day" and

after speaking with Singh and company owner Janet West, Singh was told by

Booker that his employment was terminated.  JA 1264; JA 500 [Booker Aff.] at ¶

17-19; JA 353 (termination notice); JA 338 [West Aff.] at ¶¶ 17-18.  There is no

legitimate dispute as to these events or when they occurred.   Accordingly, the

District Court properly found Singh was subject to a "swift termination".  JA 1274.

There is also no dispute that as a result of the January 18 meeting between

Singh and Booker, Booker prepared a disciplinary action form on January 18.  JA

500 [Booker Aff.] at ¶ 19; JA 1017 [Booker Reply Aff.[17]] at ¶ 6.  Appellant

---

[17]  References to the Reply Affidavit of Michael Booker, in Further Support of
Defendants Cityscape and JAD's Motion for Summary Judgment, sworn to June
14, 2013, are in the form "JA __ [Booker Reply Aff.] at ¶ __."

contends (App. Br. at 15 and 17), as she did below, that the disciplinary action form does not support a January 18 termination because it "turns out to be a 'Warning' for inappropriate behavior."  This argument is a blatant mischaracterization of the document.  Indeed, the document clearly indicates that the "Action to be taken" is "Termination".  JA 353.  Moreover, there is no dispute in the Record that the termination notice is the form typically used by JAD to document all disciplinary actions against an employee including warnings, suspensions or terminations, and that the date on the disciplinary action form indicates the date the disciplinary action is taken.  JA 1017 [Booker Reply Aff.] at ¶ 5.  Accordingly, the District Court correctly characterized this form as "Singh's Termination Notice" and found that he was terminated swiftly, on January 18, 2010 for his inappropriate behavior on January 12.   JA 1264.

Appellant's assertion that Singh disputes that he was "fired" (App. Br. at 17) is also misleading and unavailing, as it exalts form over substance.  Singh testified that he was called into Booker's office on January 20, 2010, and that as a result of that meeting he left the employment of JAD that day, never to return.[18]  JA 145

---

[18]  Singh claims that the meeting took place on January 20, not January 18, but the two day difference is immaterial, as it is not disputed that Singh never worked for JAD again, and Appellant never saw Singh at work after January 18, 2010.  JA 107 [Suares Dep.] at 198:9-14 and 200:4-10.

[Singh Dep.] at 36:14-23.[19]  Regardless of whether Singh believes he was "fired" or "laid-off", as he reported to the Unemployment Insurance Division, he was never called back and henever worked at JAD again.  JA 147 [Singh Dep.] at 38:21.

Appellant also contests the veracity of Singh's termination by citing his receipt of unemployment insurance benefits following his departure from JAD.  App. Br. at 15.  This argument is incongruous, to say the least, as it is not possible to collect unemployment insurance benefits unless there has been a termination of employment.  While Appellant contends that Singh would have been ineligible for such benefits had he been terminated for "cause" (i.e. his inappropriate conduct), she cites no legal authority for this proposition, App. Br. at 15, and the argument is a classic "red herring."  Singh's receipt of unemployment benefits is meaningless, as there is no dispute that Singh left the employment of JAD, never to return.

In sum, the District Court properly concluded that Appellant failed to raise an issue of material fact regarding Appellees' responsibility for and handling of

---

[19]  In light of all of the undisputed facts in the Record (JA 22-24 at ¶¶ 31-52), no rational jury could credit Singh's contention that he was not terminated.  Thus, summary judgment is appropriate.  *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Jackanin v. Mount Sinai Hosp.*, 98 CIV 5752 (KTD), 2003 WL 402443 (S.D.N.Y. Feb. 20, 2003) (granting summary judgment where no rational jury could find for plaintiff).

Singh's conduct. The uncontroverted facts show that Appellant spoke to her supervisor on January 14, two days after the incident; her supervisor arranged for a meeting and Appellant submitted a written complaint to Human Resources on January 18, 6 days after the incident; that Appellant never saw Singh at work after the incident; that Singh did not work again after meeting with Booker; and that Appellant never again had to interact with Singh on the job. JA 510; JA 104 and 107-9 [Suares Dep.] at 183:21-184:18, 198:8-14, 200:4-25, 206:7-9, and 208:23-210:16. Accordingly, the appeal should be dismissed, and the District Court decision affirmed.

## POINT IV

### THE DISTRICT COURT PROPERLY GRANTED THE JAD APPELLEES' MOTION FOR SUMMARY JUDGMENT ON APPELLANT'S TITLE VII RETALIATION CLAIMS

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must establish that: (1) she was engaged in a protected activity; (2) the employer was aware of that activity; (3) an employment action adverse to the plaintiff occurred; and (4) there existed a causal connection between the protected activity and the adverse employment action. *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205-6 (2d Cir. 2006); *Gutierrez v. City of New York*, 756 F. Supp. 2d 491, 509 (S.D.N.Y. 2010). The action must be "materially adverse," one that "might have dissuaded a reasonable worker from making or supporting a charge of

30

discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). Ultimately, Appellant must also establish that she would not have been subjected to the adverse employment actions she complains of "but for" her participation in protected activity. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013).

Appellant devotes little effort to the retaliation claim in her brief on appeal, merely stating that she was engaged in protected activity, and that her hours and shifts were allegedly changed and pay decreased as a result of this protected activity, by virtue of certain conduct engaged in by Appellees and their employees. App. Br. at 19-20. Appellant fails to provide any factual support for these assertions (the brief is devoid of any citations to the Record), and also fails to provide legal authority. Id at 20. Relying instead on conclusory recitations, Appellant contends that she has "met her burden of proof" to sustain the retaliation claim. *Id.* As set forth more fully below, the District Court properly granted summary judgment dismissing Appellant's retaliation claims.

### A. Appellant's Hours and Wages Were Not Reduced Due to Retaliatory Changes in the Schedule

The crux of Appellant's retaliation claim is that her hours and pay were reduced because she made internal and external complaints of discrimination. See App. Br. at 20. In order to sustain this claim, Appellant must establish a genuine issue of fact establishing that she was treated differently than other "similarly

situated" employees.  *See Richards-Byers v. New York City Dep't of Fin.*, 449 F.

App'x 55, 56 (2d Cir. 2011).  The District Court properly concluded that Appellant

failed to do so.

### 1. Conduct Occurring Prior to January 14, 2010 Cannot Be "Retaliatory"

Appellant reported the January 12 incident on January 14, 2010.  JA 104

[Suares Dep.] at 183:21-184:9.  Thus, <u>none</u> of the alleged retaliatory actions

occurring prior to January 14 can serve as the basis of a retaliation claim.

*Shepherd v. BCBG Max Azria Grp., Inc.*, 11 CIV 7634 (RJS)(AJP), 2012 WL

4832883, at *4 n.4 (S.D.N.Y. Oct. 11, 2012) ("alleged employer acts that

admittedly began prior to an employee's participation in a protected activity cannot

be considered retaliatory"); *Ford v. New York City Dep't of Health & Mental

Hygiene*, 545 F. Supp. 2d 377, 394-95 (S.D.N.Y. 2008) (retaliatory conduct cannot

occur prior to the act upon which retaliation is based).

Appellant alleges that after reporting the incident on January 14, 2010, she

was placed on the 3:45 p.m. tour, through the end of March, 2010.  JA 127-28

[Suares Dep.] at 332:20-336:4.  She concedes, however, that the 3:45 p.m. tour

<u>began</u> on January 5, 2010, when the winter schedules (for January-March) were

set.  JA 91 [Suares Dep.] at 90:13-16 and 91:19-21; JA 198-228.  Accordingly, the

District Court properly found that Appellant was assigned to her 3:45 p.m. shift for

January through March 2010 <u>before</u> the January 12 incident and <u>before</u> she

reported the incident on January 14.  JA 1264.  Any retaliation claim related to that three-month schedule and its purported effect on her compensation is a chronological impossibility and was properly rejected.  *See Shepherd*, 2012 WL 4832883, at n.4; *Ford*, 545 F. Supp. 2d at 394-95.

### 2.  No Retaliatory Scheduling Occurred After January 14, 2010

For the following schedule period, effective March 23 through August 1, 2010, Appellant was assigned to an 8:20 a.m. shift that included weekend days.  JA 1264 citing JA 229-290.[20]  Appellant's contention that this schedule is "retaliatory" is perplexing, insofar as she testified that a "favorable" spring and summer schedule would be a morning shift with weekend days.  JA 92-93 [Suares Dep.] at 112:2-114:6.  The District Court recognized that Suares disputed that she had requested an 8:20 a.m. shift, but held that even if she had requested a 10:00 or 10:15 a.m. shift, 5 days a week, "no reasonable jury would conclude that this time discrepancy would dissuade a reasonable employee from making a charge of discrimination."[21]  JA 1276; *Burlington*, 548 U.S. at 68; *see also Nicholls v.*

---

[20]  Appellant conceded that no discrimination or retaliation occurred with respect to subsequent schedules, since JAD went to a system whereby Tour Guides selected their shift on the basis of seniority.  JA 94-95 [Suares Dep.] at 125:11-126:2.

[21]  Curiously, while claiming to desire a five-day per week schedule in the spring, JA 92-93 [Suares Dep.] at 113:14-18, Appellant also testified that she wanted Mondays, Tuesdays, Thursdays and Fridays off.  JA 92 [Suares Dep.] at 112:5-9.  She also testified that the very shift she viewed as retaliatory for being so bad, was one that "other tour guides wanted",  JA 119 [Suares Dep.] at 299:2-300:9,

*Brookdale Univ. Hosp. & Med. Ctr.*, 205 F. App'x 858, 861 (2d Cir. 2006).  This conclusion was not erroneous.

### 3.  <u>Appellant Did Not Suffer a Retaliatory Reduction In Pay</u>

The District Court was also correct to reject Appellant's contention that her pay was reduced in retaliation for the harassment claim she pursued.  The Record establishes that while Appellant's earnings went down approximately 20% from 2009 to 2010, fifteen other male and female Tour Guides of roughly the same level of seniority saw their earnings decrease between 15% and 54% during that same period.[22]  JA 338-9 [West Aff.] at ¶¶ 21-24; JA 355.  As noted by the District Court, Appellant failed to offer any evidence of pretext, or that she was singled out.  JA 1276.  A claim of retaliation will not lie where the appellant was not treated differently than other employees.  *See La Marco v. New York State Nurses Ass'n*, 118 F. Supp. 2d 310, 312 (N.D.N.Y. 2000).

Moreover, the District Court properly relied on the existence of legitimate

---

undercutting the notion that it was the type of action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. 53.  Accordingly, the District Court properly held that "no reasonable jury" could find such action retaliatory.

[22]  Appellant did not contest these facts below.  Instead, she misrepresented them to the Court by incorrectly claiming that it was her pay, not the pay of other Tour Guides, that was "decreased …by as much as 54% by the end of 2010." JA 956 [Suares Opp. Aff.] at ¶ 39; JA 981 [Opp. Mem.] at 14.  In her brief on appeal Appellant acknowledges that the District Court admonished her for this misrepresentation, but she seems to suggest that it was not a misrepresentation. App. Br. at 19, n. 1.

business reasons, completely unrelated to Appellant's protected activity, explaining the decline in pay for some Tour Guides' in 2010. JA 1275-76. The Record establishes that the 2010 winter was more severe than the 2009 winter, a factor which negatively impacted tourism and ridership on double-decker, open-top buses and resulted in fewer tours. JA 1265; JA 340-41 [West Aff.] at ¶¶ 31-37; JA 382-87. Additionally, fewer shifts were available to many Tour Guides in 2010. JA 1265; JA 339-40 [West Aff.] at ¶¶ 26-7. In fact, in the spring of 2009, Appellant, and 24 other Tour Guides had a 5-day a week schedule. JA 339 [West Aff.] at ¶ 25; JA 356-75. In the Spring of 2010, many Tour Guides had either a 3-day or 4-day a week schedule. JA 339 [West Aff.] at ¶ 26; JA 376-81. Appellant was one of the more fortunate Tour Guides in that she had a 4-day a week Spring 2010 schedule. *Id.* These business decisions satisfy JAD's burden of producing evidence of a legitimate, non-discriminatory reason for any difference in Appellant's pay from 2009 to 2010. *See Marvelli v. Chaps Cmty. Health Ctr.*, 193 F. Supp. 2d 636, 656-7 (E.D.N.Y. 2002).

Presumably in support of her retaliation claim, Appellant mentions "deadheading" in her brief on appeal, without any discussion or explanation of its meaning. App. Br. at 19. A "deadhead" occurs when a tour bus is emptied before the conclusion of a full tour, and the bus is instructed to report back to the origination point to begin a new tour. JA 341-2 [West Aff.] at ¶¶ 41-5. Appellant

35

suggests that due to this practice her pay decreased because she was prevented from receiving tips at the conclusion of the tour.  App. Br. at 19.

The District Court properly rejected the contention that Appellant was unfairly singled out for "deadheading" (JA 1277) as Appellees' asserted a legitimate business reason for the practice (to efficiently serve midtown tourists early in the morning), and it was uncontroverted that Appellant was not the only Tour Guide required to "deadhead."  JA 341-2 [West Aff.] at ¶¶ 41-6.  Contrary to Appellant's unsupported legal assertion, this "legitimate non-discriminatory" reason coupled with the fact that Appellant was treated the same as other employees, in fact, negate her retaliation claim.  *See La Marco*, 118 F. Supp. 2d at 312.

Accordingly, Appellant cannot demonstrate the existence of a genuine issue of material fact with respect to her assertion that she suffered a reduction in pay because she engaged in protected activity.  The District Court properly dismissed these claims.

### B. Appellant Fails to Generate a Triable Issue of Fact Regarding the Examples of Retaliation in Her EEOC Charge

Although not alleged in the Complaint to the Southern District, Appellant alleged three additional instances of purported retaliation in her August 1, 2010 rebuttal filed with the EEOC.  JA 157.   She claims these events occurred on April

36

11, April 18 and July 24, 2010.[23]  *Id.*  The District Court properly dismissed these claims because "no causal connection" could be inferred between the "protected conduct" and the "retaliatory action."  JA 1276-77.

As noted by the District Court, the first two dates are prior to notice of the EEOC charge and three months after the incident, and the third date occurred three months after the EEOC charge, and 6 months after the incident.  JA 1276-77.  No causal connection can be inferred here because the "retaliatory action must follow closely on the protected conduct…to permit an inference of retaliatory intent." *Shanahan v. New York*, 10 CIV 0742, 2011 WL 223202, at *5 (S.D.N.Y. Jan. 24, 2011) (citing cases establishing that three months or more is too long to infer retaliatory intent); *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 26 (2d Cir. 2011) (11 months); *Chamberlin v. Principi*, 247 F. App'x 251, 254 (2d Cir. 2007) (5 months).  Under these circumstances, it was not erroneous for the District Court to dismiss these claims.

---

[23]  In the July 24, 2010 incident, Appellant was taken off her bus and told not to report to work on July 25.  She claims this was retaliation.  As contemporaneously documented by the field supervisor, however, she was taken off her bus and sent home due to inappropriate and unprofessional conduct.  See JA 291-3 and 27-8 at ¶¶ 70-79.

### C. Appellant's Claims About Her Co-Workers Do Not Rise to the Level of a Title VII Retaliation Claim

Appellant also alleges a laundry list of alleged retaliatory acts by certain co-workers. [24]  Some are not adverse employment actions; some are not causally connected to her protected activity; some simply make no sense.  None, alone or in the aggregate, give rise to a Title VII retaliation claim.

The District Court properly held that Appellant's protected activity does not immunize her from "those petty slights or minor annoyances that often take place at work and that all employees experience."  *Burlington*, 548 U.S. at 68.  Accordingly, the District Court held that Appellant's "other retaliation allegations [which] include complaints of hostile actions and gestures by co-workers" were not "materially adverse and causally connected to her protected activity" to establish "retaliation via these acts."  JA 1277.  These minor annoyances that other employees also experienced cannot serve as the basis for a retaliation claim. *Burlington*, 548 U.S. at 68.

---

[24]  For example, a co-worker giving her a "cut throat" sign, indicating that her tour was being cut short and passengers were being let off her bus (JA 122 and 130 [Suares Dep.] at 313:15-18 and 344:12-18); various comments by one or another co-worker (JA 118 and 129-30 [Suares Dep.] at 296:21-297:3 and 342:2-343:20); see generally JA 118-35 [Suares Dep.] at 296:11-356:15 and 369:23-371:5.  Not only were these merely "minor annoyances", but this kind of behavior occurred prior to the January 2010 incident (and could therefore not be "retaliatory"), and Appellant herself engaged in this sort of "rough and tumble" behavior both before and after January 2010.  JA 502-509.

# POINT V

## THE DISTRICT COURT PROPERLY GRANTED APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON APPELLANT'S REMAINING CLAIMS

The Complaint and Amended Complaint also appear to assert gender-based unequal pay claims under both Title VII and the EPA.  While Appellant fails to raise these claims in her brief on appeal, other than in her Jurisdictional Statement, they are arguably raised by the appeal itself, and so are addressed herein.[25]

### A. Appellants Title VII Equal Pay Claim Is Time Barred Because She Failed to Exhaust Her Administrative Remedies

The Second Circuit has stated repeatedly that before bringing a Title VII action in the district court, an aggrieved employee is required to "exhaust [her] administrative remedies."  *Legeno v. Douglas Elliman, LLC*, 311 F. App'x 403, 404 (2d Cir. 2009).  "[A]dherence to this jurisdictional prerequisite is essential to preserve the purpose of filing an EEOC charge, which is to encourage settlement of discrimination claims through conciliation and voluntary compliance." *Sundaram v. Brookhaven Nat. Labs.*, 424 F. Supp. 2d 545, 567 (E.D.N.Y. 2006). Thus, a district court may only entertain claims included in the EEOC charge itself

---

[25]  Appellant has waived these claims on appeal by failing to raise them in her brief on appeal. *See Mitchell v. Brooklyn Hosp. Ctr.*, 326 F. App'x 44, 44-45 (2d Cir. 2009).  Perhaps this is because she has in fact already abandoned them.  As the District Court noted, Appellant failed even to respond to Appellee's argument regarding exhaustion of remedies and thus seemingly "conceded these claims."  JA 1278.

or those "reasonably related" to the charge. *Martin v. MTA Bridges & Tunnels*, 610 F. Supp. 2d 238, 252-53 (S.D.N.Y. 2009).

The District Court properly adhered to this standard and barred Appellant's claim on these grounds. JA 1278. As set forth in Judge Nathan's decision, Appellant failed to allege a Title VII equal pay claim in either her Initial or Amended EEOC Charges.[26] JA 1279.

Moreover, as noted by the District Court, the EEOC Charges focused on "the Singh incident and alleged subsequent retaliation", thus, the "scope of the EEOC's investigation would not reasonably be expected to include a broader inquiry into unequal pay practices." JA 1278. This is further supported by the fact that none of the unequal pay allegations are addressed in the EEOC's Dismissal and Notice of Rights dated May 17, 2011. JA 193-97.

Appellant also admitted that her charges only related to sexual harassment and retaliation, not "any other form of discrimination." JA 114-17 [Suares Dep.] at 266:4-267:13, 287:22-290:17, and 291:3-293:13; JA 76-83; JA 154-9. As such,

---

[26] Although not explicitly found by the District Court, a cursory review of the Initial and Amended EEOC charges make it clear that no equal pay claim was asserted. For example, the (1) "Equal Pay" box was not checked on any of her EEOC filings (JA 76-83 and 154-9), (2) there is no mention of the alleged differences in (a) hourly wages of male employees versus her hourly wages, (b) hours given to male employees versus her hours, (c) weekly wages of male employees versus her weekly wages, (d) "more favorable assignment" given to male employees versus her assignment, (e) "forty hour work weeks" given to male employees but not to her, (f) "benefits and emoluments" conferred upon male employees but not to her. *Id.* and JA 69-70 at ¶¶ 68-70, 72, 75-76.

the District Court properly barred those claims because they were not

administratively exhausted. *Faktorovich v. Mem'l Sloan-Kettering Cancer Ctr.*, 13

CIV 4051, 2014 WL 4652801, at *1 (2d Cir. Sept. 19, 2014) (summary order).

## B. Appellant's Equal Pay Act Allegation Lacks Triable Issues of Fact

The same allegations identified above also form the basis of Appellant's

gender-based pay discrimination claim under the EPA, which is part of the FLSA.

JA 54 at ¶¶ 65-67; JA 69-70 at ¶¶ 67-73.  The District Court dismissed this claim,

noting that in opposition to the summary judgment motion, Appellant made "only

one cursory reference to this allegation," and pointed "to nothing in the Record to

support these claims".  JA 1279.

The District Court properly granted the motion for summary judgment on

the EPA/FLSA claims.  In order to establish a *prima facie* case under these

statutes, Appellant was required to prove three elements:  first, that the employer

pays different wages to employees of the opposite sex; second, that the employees

perform equal work on jobs requiring equal skill, effort, and responsibility; and

third, that the jobs are performed under similar work conditions.  *Lavin-McEleney*

*v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001); *Moccio v. Cornell Univ.*, 889 F.

Supp. 2d 539 (S.D.N.Y. 2012).  Once a *prima facie* showing is made, the burden

shifts to the employer to prove that the pay differential is based on a legitimate

business reason.  29 U.S.C. § 206(d)(1); *Corning Glass Works v. Brennan*, 417

41

U.S. 188, 196, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974); *Moccio*, 889 F. Supp. 2d 539. If the employer satisfies its burden of justifying the wage differential with a legitimate business reason, the Appellant must demonstrate that the employer's explanation is merely a pretext for discrimination. *Christiana v. Metro. Life Ins. Co.*, 839 F. Supp. 248, 252 (S.D.N.Y. 1993). Appellant here failed to meet both her initial as well as her ultimate burden of proof.

Appellant alleged an EPA violation by claiming that nine Tour Guides (referred to as "bidded" Tour Guides) are paid a "guaranteed" rate, whereas she, like all other Tour Guides, simply received an hourly rate for hours worked. JA 86-90 [Suares Dep.] at 58:23-70:3; 78:5-81:21. This allegation ignores the fact that approximately seventy percent (70%) of the Tour Guides are male, with about 80 to 100 Tour Guides on the seniority list. JA 342-43 [West Aff.] at ¶¶ 49-50; JA 399-432. Hence, the fact that nine male Tour Guides received a "guaranteed" rate fails to establish the existence of a gender based pay differential, as this "guaranty" impacts a large percentage of the male work-force in the same manner as it impacts Plaintiff and other female employees. *See Lavin-McEleney*, 239 F.3d at 480(EPA claim requires that employer pay different wages). Appellant never rebutted this rationale. JA 1279.

Appellant also maintained that male Ticket Agents and Dispatchers were paid more than she was paid as a Tour Guide. JA 95-96 [Suares Dep.] at 126:3-

42

128:16; 129:13-131:17.  This claim required Appellant to demonstrate that the employees she is comparing herself to "perform equal work on jobs requiring equal skill, effort and responsibility."  *Lavin-McEleney*, 239 F.3d at 480. Application of this standard "depends on actual job requirements and performance."  29 C.F.R. § 1620.13(e); *Moccio*, 889 F. Supp. 2d 539.  As the District Court noted, however, there is nothing in the Record to support this claim. JA 1279.  In contrast, there is ample evidence supporting the conclusion that these jobs are not "equal."  JA 343-4 [West Aff.] at ¶¶ 51-61.[27]

Accordingly, for the reasons set forth herein and in the District Court's opinion, Appellant's EPA/FLSA claim was properly dismissed.

## POINT VI

## THE DISTRICT COURT PROPERLY GRANTED APPELLEE CITY SIGHTS' MOTION FOR SUMMARY JUDGMENT

Appellees JAD and CityScape join in the arguments regarding the joint employer issue set forth in City Sights' opposition papers submitted on this Appeal.

---

[27]  Appellant also compared herself to Trahan, a Supervisor (JA 95 [Suares Dep.] at 129:3-12) but this comparison is unavailing under the EPA and must be dismissed. *Ludwiczak v. Hitachi Capital Am. Corp.*, 528 F. Supp. 48, 60, 61 (D. Conn. 2007) (where plaintiff compared herself to supervisor the fact that defendant was her supervisor "alone is sufficient to demonstrate that plaintiff and defendant did not share equal responsibility for their work even if their skill and efforts in some respects were equal").

## CONCLUSION

For the foregoing reasons, this Court should uphold the Judgment in Appellees' favor dismissing the Amended Complaint in its entirety.

Dated:     New York, New York
             October 6, 2014

                     Respectfully Submitted,
                     VANDENBERG & FELIU, LLP

                     By:       /s/ Christopher A. D'Angelo
                           Christopher A. D'Angelo (CD-7081)
                           Debra Kobrin Levy (DK-3651)
                     60 East 42nd Street, 51st Floor
                     New York, New York 10165
                     (212) 763-6800 Telephone
                     (212) 763-6810 Facsimile

                     *Attorneys for Appellees Cityscape Tours, Inc. and JAD Transportation, Inc.*

44

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(B)

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 10,913 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 with 14-point Times New Roman font.

Dated:     October 6, 2014

        /s/ Christopher A. D'Angelo
          Christopher A. D'Angelo